BAIR BROTHERS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9177. Promulgated October 22, 1927.

In October, 1920, through a court decision, the petitioner lost title to a certain timber tract purchased in 1917, upon which entry had not been made. Suit could not be maintained against the vendor for breach of warranty because the petitioner had not been evicted. No refusal of refund of purchase price had been made, and, upon request in February, 1921, the vendor repaid the purchase price. *Held,* that petitioner did not sustain an actual loss in 1920, and, therefore, no deduction may be taken on account thereof.

*Theo. B. Benson, Esq.,* for the petitioner.
*Bruce A. Low, Esq.,* for the respondent.

This proceeding is for the redetermination of a deficiency in income and profits tax for the calendar year 1920 in the amount of $5,222.73. The entire amount of the deficiency is not in controversy but only so

much thereof as results from the respondent's action in disallowing as a deduction from gross income the amount of $11,709.25 on account of a loss alleged to have been sustained by reason of a defective title to a timber tract previously purchased by the petitioner.

FINDINGS OF FACT.

The petitioner is a corporation organized in 1919 under the laws of the State of West Virginia and succeeded to all of the assets and liabilities of Bair Brothers, a partnership. Its principal place of business is at Beckley, W. Va.

Under date of July 24, 1917, by warranty deed, one Sarah A. Fuller, attempted to convey to the partnership of Bair Brothers a fee simple interest in a timber tract of 600 acres. The deed recited a consideration of $10,000, the full amount of which was paid on or before July 24, 1919. The petitioner also paid taxes, interest and legal expenses, the amount of which is not disclosed. The deed contained the following covenants and warranties:

> The said party of the first part hereby covenants to and with the said parties of the second part that she has the right to convey the timber and the rights, privileges and easements hereby conveyed; that the said parties of the second part shall have quiet enjoyment of the same, free from all encumbrances; that the said party of the first part will execute such further assurances of said timber and the rights, privileges and easements hereby conveyed as may be requisite and that she will warrant generally the property hereby conveyed, subject, nevertheless, to a vendor's lien to secure the unpaid purchase money evidenced by the notes aforesaid which lien is hereby expressly retained.

Sarah A. Fuller had acquired the land through one James Mc-Creary, whose title thereto was contested in a suit by one Sprigg. On October 12, 1920, the Supreme Court of Appeals of West Virginia in the case of *Spriggs* v. *McCreary*, 87 W. Va. 204, decided that McCreary had no title to the property in question and as a result of this decision the conveyance from Sarah A. Fuller to the petitioner was determined to be of no effect.

Upon learning of the court decision of October 12, 1920, the officers of the petitioner consulted their attorney in Beckley, and an attorney at Uniontown, Pa., where Mrs. Fuller then lived, relative to bringing suit against her. Petitioner's officers were advised in both instances that a suit could not be maintained at that time against Mrs. Fuller to recover the purchase money.

Robert T. Bair, one of the petitioner's officers, in December, 1920, went to Uniontown, Pa., and procured from the clerk of the court a list of the property holdings of Mrs. Fuller, which list showed her holdings to consist of a dower interest in an estate. While in Uniontown at this time, Mr. Bair endeavored to see Mrs. Fuller with respect to repayment of the purchase price, but by reason of the fact

that she was ill he was unable to do so. He was referred to Mrs. Fuller's attorney, with whom the matter was discussed, but apparently an agreement was not reached at that time as to the repayment of the purchase price.

The petitioner in response to its letter of January 6, 1921, to Mrs. Fuller was advised by a letter dated February 3, 1921, from Mrs. Fuller's attorneys, that she did not intend to stand on technicalities and that she was ready and willing to pay back the consideration money of $10,000 and the petitioner was requested to forward a quit claim deed so that the repayment of the money could be promptly made. On February 18, 1921, one of the petitioner's officers, on the occasion of his first conference with Mrs. Fuller, collected and received from her the sum of $10,749.94 as a return of the purchase money for the property in question.

At no time from the date of the purchase of the property to the date of the decision of the court in 1920, did the petitioner make any entry thereon or did it cut and remove any of the timber.

The petitioner claimed as a deductible loss in its return for 1920 the amount of $11,959.31 alleged to represent a loss sustained on account of the defective title to the property which it purchased from Mrs. Fuller.

Upon audit of the return, the Commissioner determined that of the sum of $11,959.31 claimed as a deduction for the alleged loss, $959.31 represented appreciation and that the cost of the timber tract was $11,000. The Commissioner further determined that the petitioner was entitled to a deduction of $250.06, being the difference between the cost of the timber tract and the amount of $10,749.94 recovered from Mrs. Fuller, and accordingly allowed the deduction of that amount.

### OPINION.

Love: The petitioner claims the right to deduct the sum of $11,709.25 upon the ground that it lost the title to the timber in question in 1920, and that it was immediately determined that no recovery could be had against the vendor, Sarah A. Fuller. However, as stated in the findings of fact, the record herein does not disclose the amount, over and above the consideration named in the deed, expended by the petitioner for taxes, interest, and legal expenses, and the Commissioner having determined that the cost of the timber tract was $11,000, the loss, if any, must necessarily be restricted to that amount.

In support of this contention the petitioner takes the position that under the law of West Virginia an action for breach of warranty would not lie against the vendor because it had not been evicted from the property in question. The petitioner then urges that having

no right of action against the vendor it necessarily suffered a loss in 1920, no recovery having been had in that year.

Assuming that the law of West Virginia has been correctly stated, we are unable to agree that the petitioner suffered a deductible loss in the year 1920.

Section 234 (a) (4) of the Revenue Act of 1918 authorizes, as deductions in computing net income, "Losses sustained during the taxable year and not compensated for by insurance or otherwise." We have on other occasions been called upon to interpret this section and in *Jackson County State Bank*, 2 B. T. A. 1100, we stated that:

> The statute provides for a deduction on account of losses sustained during the taxable year. The expression "loss sustained" means actual losses and not paper losses * * *.

In *Carl Muller*, 4 B. T. A. 169, we said:

> The statute does not permit the deduction of doubtful debts partly written off, *Steele Cotton Mill Co.*, 1 B. T. A. 299, nor of possible or probable losses. The loss must be actually sustained in the taxable year to be deductible. * * * On the other hand, claiming a loss he must prove as a fact that it was actually sustained within the year. The sustained loss and not his ascertainment is the statutory factor * * *.

It is clear to us, in view of the above-quoted statements of the Board, that the petitioner did not sustain an actual loss in 1920.

It appears that the petitioner, upon learning that it could not proceed immediately against Mrs. Fuller for breach of warranty, assumed that she would not or could not repay the purchase price. But the record shows that the petitioner was not justified in such an assumption. No investigation of Mrs. Fuller's financial standing was made other than that of her property holdings. Neither Mrs. Fuller nor her attorneys refused to repay the purchase money, and, as a matter of fact, the evidence discloses that Mrs. Fuller was anxious to settle the matter. She was ill in December, 1920, and the petitioner's officer who visited Uniontown at that time was unable to see her, but in February, 1921, at the time of his first talk with her she gave Robert Bair, the above-mentioned officer, a check for $10,749.94 and the matter was closed.

In view of the fact that the petitioner was unjustified in assuming that Mrs. Fuller would not or could not repay the purchase money, and of the further fact that the petitioner during 1920 negotiated relative to the repayment of the money, which negotiations resulted in the repayment thereof early in 1921, we think that it is conclusively established that the loss claimed was not real and consequently an actual loss was not sustained in 1920.

We, therefore, approve the respondent's action in regard thereto.

*Judgment will be entered for the respondent.*

Considered by TRUSSELL, LITTLETON, and SMITH.